Leo Eugene SWANSON, Petitioner and Appellant,

v.

STATE of South Dakota, DEPARTMENT OF COMMERCE AND REGULATION, Respondent and Appellee.

No. 15657.

Supreme Court of South Dakota.

Dec. 23, 1987.

David A. Bradsky of Bradsky & Bradsky, Rapid City, for petitioner and appellant.

Richard D. Coit, Asst. Atty. Gen., Pierre, for respondent and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice.

Appellant, Leo Swanson, appeals a circuit court decision affirming a State Department of Commerce and Regulation (Department) decision refusing to issue him a restricted driver's license. We affirm.

On August 2, 1985, appellant was convicted of Driving While Under the Influence of an Alcoholic Beverage (DWI) in violation of SDCL 32–23–1. On April 13, 1986, he was arrested and charged with the second DWI offense. Following the second arrest, he refused a chemical test of his blood under the provisions of the Implied Consent Law. SDCL 32–23–10.

The Department was informed of appellant's refusal on April 16, 1986 and notified him his driver's license would be automatically revoked under the provisions of SDCL 32–23–11 unless he petitioned for a hearing before the Department within thirty days. He did not request any hearing, and the Department revoked his driver's license for one year, pursuant to SDCL 32–23–11. This section also states that the Secretary of Commerce and Regulation may adopt rules for restricted licenses as to (1) eligibility; (2) application; (3) determination; (4) limitations; and, (5) grounds for revocation. Pursuant thereto, the Secretary has adopted a rule for restricted licenses providing in part:

> A person who has previously been convicted of a violation of SDCL 32–23–1 or whose license has been revoked under the provisions of SDCL 2–23–11 within the five-year period preceding the date of refusal is not eligible to receive a restricted license. He need not be notified of the privilege of applying for such a license when notice of revocation is mailed.

ARSD 61:19:01:02.

On August 26, 1986, appellant pled guilty to the charge of DWI arising from his second arrest. Pursuant to a plea bargain, Count II of the information charging him with a second offense was dismissed. Upon receiving notice of the second DWI conviction, the Department revoked appellant's driver's license for a period of one year to commence on August 26, 1986, the date of his second conviction. This action was taken pursuant to SDCL 32–12–52.1 which provides:

> The Department of commerce and regulation shall revoke the license or permit of any operator upon receiving notice of an operator's conviction for a violation of the provisions of § 32–23–1 to the extent that the operator's privileges should have been revoked, if the judgment and sentence of the trial court failed to invoke the mandatory provisions of §§ 32–23–2 to 32–23–4, inclusive, *or the operator had been convicted consistent with the records of the department of commerce and regulations.* (Emphasis added).

On October 8, 1986, appellant submitted an application to the Department for a restricted driver's license pursuant to SDCL 32-23-11. The Department denied his application on grounds he was ineligible for a restricted license under ARSD 61:19:01:02. Under this regulation he was ineligible for two reasons: (1) Refusing chemical test of blood and (2) his second DWI within five years.

Appellant claims ARSD 61:19:01:02 violates the due process clause of the State and Federal Constitution because of vagueness. We disagree.

■ A civil statute is unconstitutional if its language does not convey sufficient definite warning of proscribed conduct, when measured by common understanding or practice, causing persons to necessarily guess at its meaning and applicability. *Greenawalt v. Zoning Bd. of Adj. of Davenport*, 345 N.W.2d 537 (Ia.1984). A state administrative regulation must pass the same constitutional muster as a state statute. 2 Am.Jur.2d Constitutional Law §§ 297, 298 (1962).

■ ARSD 61:19:01:02 is clear in both its meaning and applicability. The rule clearly holds all persons ineligible who, have: (1) been previously convicted of a violation of SDCL 32-23-1 within five years, or (2) had their license revoked for refusal to submit to a chemical test. In this case, appellant was ineligible under both criteria.

Appellant further argues the regulation is unreasonable, arbitrary and fundamentally unfair. He argues the regulation arbitrarily and unfairly discriminates against those who refuse to submit to a chemical test and is unreasonable because it does not provide a hearing for those persons who are denied a restricted license because they are ineligible under ARSD 61:19:01:02. We disagree.

■ Differential treatment by a governmental agency of persons who refuse chemical testing and persons who submit to chemical testing and are convicted of DWI, is reasonable and constitutionally permissible. Under the rational basis test, a class distinction will survive if it rationally fur-

thers a legitimate state interest. *McGowan v. Maryland*, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961). In *Veach v. Iowa Dept. of Transp.*, 374 N.W.2d 248 (Iowa 1985), the petitioner challenged the constitutionality of an administrative rule adopted by the state's department of transportation which declared ineligible for work permits, persons whose operating privileges were revoked for a refusal to submit to a chemical test. Persons who submitted to chemical testing were eligible for the temporary work permit even if the chemical test resulted in a finding of intoxication. The Iowa Supreme Court, on application of the traditional rational basis test of constitutionality, declared the rule valid and in doing so, stated:

> The right of an arrested motorist to refuse chemical testing is not mandated by the Constitution, but is 'simply a matter of grace bestowed by the ... legislature.' ...

> The State's interest in public safety is substantially served by treating people who refuse chemical testing differently from people who submit to testing. The State has a strong interest in obtaining the best available evidence of the amount of alcohol in a driver's bloodstream at the time of arrest. Accurate test results, if positive, provide valuable evidence in criminal prosecution, and the legislature has given high priority to 'the enforcement of laws prohibiting operation of a motor vehicle while under the influence ... or while having a certain amount of alcohol in the blood.' ...

> The DOT rule here challenged encourages drivers to submit to chemical testing and thereby facilitates citizen cooperation in the enforcement of highway safety. The denial of a work permit upon a driver's refusal to submit to chemical testing is simply one method used to achieve that legitimate goal.

*Id.* at 250. We agree with the rationale of the Iowa Court.

■ Appellant argues the regulation is constitutionally unreasonable because it does not provide the appellant a hearing on

his application for a restricted license. We disagree.

This is not the case where the government is depriving someone of a vested liberty or property right without procedural due process. In this case appellant's regular license had already been revoked, and he was requesting issuance of a restricted license, i.e., a new license. Where the question is whether a license should issue initially, due process ordinarily does not require an opportunity for a hearing. *Saginaw Valley Trotting Ass'n., Inc. v. Mich. R. Com'r*, 269 N.W.2d 676 (Mich.Ct.App. 1978). Since this was not a revocation of driving privileges but a denial of appellant's request for driving privileges, therefore, no governmental "taking" was involved and no hearing was required.

I respect Justice Henderson's right to dissent, but the issue on appeal is whether A.R.S.D. 61:19:01:02 violates due process, not withdrawal of a plea of guilty. In my opinion we should stick to the issues on appeal. See my dissenting opinion in *State v. Jones*, 406 N.W.2d 366 (S.D.1987).

MORGAN, SABERS and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

As I often see in this Court, critical facts have been omitted in the majority opinion which require me to write specially. Legal authorities not furnished by the briefs, nor discussed by the majority opinion, must attend the omitted facts. Weighing these authorities creates a different result and, therefore, I respectfully dissent.

Appellant is a bachelor rancher, living in a remote area, to whom transportation for food, medication, parts and ranch supplies is a vital necessity. To lose a work permit, in addition to his driver's license, is a very severe penalty. By themselves, these facts might well be simply a matter of sympathy, of little legal weight.

Add, however, the uncontested fact that he entered a plea of guilty before a law-trained magistrate in magistrate court of the circuit court of this State. Having been previously convicted of DWI, he was apparently quite reluctant to enter a plea to a second-offense DWI. Pursuant to a plea bargain, he entered a guilty plea to a first-offense DWI, in return for which the second-offense charge was dismissed. The magistrate required him to surrender his driver's license for thirty days, issued him a work permit for that period, ordered his attendance at weekly Alcoholics Anonymous meetings for an extended time, and sentenced him to serve thirty days in jail, suspended upon his payment of the fine and his compliance with the court order.

Consider now the Department of Commerce and Regulation of this State. It suspended his driver's license not once, but twice! The Department initially revoked his license for a year, on May 19, 1986, after receiving notice that appellant had refused to take a blood-alcohol test per SDCL 32–23–11. As appellant did not, apparently, contest this, there is little we can do. He did not use the administrative avenues open to him. The second suspension, again for a full year, was made by the Department after appellant pled guilty before the magistrate, and ran from the date of his conviction, August 26, 1986. This suspension was predicated on the fact that appellant was convicted of DWI twice in the statutory period set out in SDCL 32–23–4.

The Department, in this second suspension, relied on SDCL 32–12–52.1, which authorizes it to override trial courts which impose more lenient sentences than those required by other DWI statutes. It later refused to consider appellant's application for a limited license pursuant to ARSD 61:19:01:02, which categorically excludes from consideration for such licenses all applicants convicted of DWI or violation of the implied consent statute within five years previous to a current test refusal.

In this case, we are treated to inconsistent and discordant positions of the State, through the State's Attorney, offering appellant a lenient sentence, which was approved by the magistrate, a sentence appropriate to a first-offense DWI; but, thereafter, the Department, per SDCL 32–

12–52.1, then nullified the effect of the court's sentence and imposed its own, more severe, penalty. One instrument of the State would appear to be totally agreeable with the plea bargain, whereas another agency of the State takes a totally antithetical posture to the first position.

I do not dismiss, out-of-hand, the plea-bargain issue. Appellant had bargaining chips. The State, in securing his guilty plea, saved itself the time and trouble of a trial. This is not insufficient consideration for a plea bargain. *See generally Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The United States Supreme Court, in *Santobello*, had this to say about plea bargaining, after analyzing the benefits to governments:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

This analysis was recently summarized in *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.1987): "Contractual principles apply insofar as they are relevant in determining what the government 'owes' the defendant. If the defendant lives up to his end of the bargain, the government is bound to its promises." (Footnotes omitted.) In *State v. Lohnes*, 344 N.W.2d 686, 688 (S.D.1984), this Court applied the *Santobello* rule in invalidating a conviction grounded on a defendant's entering a guilty plea based on a misunderstanding. This Court hinged its decision on the defendant's expectations. 344 N.W.2d at 689. The fundamental concept is that we must look to the totality of the circumstances to determine whether a guilty plea was voluntarily and knowingly entered. *State v. Bolger*, 332 N.W.2d 718, 720 n. 2

(S.D.1983) (citing *Watkins v. Solem*, 571 F.2d 435, 437 (8th Cir.1978)). That the breach of covenant was inadvertent is irrelevant. *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

Looking at these facts, appellant was misled. The State's Attorney and magistrate lived up to their ends of the bargain, but the Department, an arm of the same sovereign, the State of South Dakota, reduced the plea bargain to a nullity. The State, through the Department, took back what it had offered him through the State's Attorney and ratified by the magistrate. Obviously, it is a manifest injustice when a defendant enters into an agreement and the sovereign reneges on the agreement. As far as I am concerned, the sovereign is the sovereign. The sovereign cannot do business this way in our courts employing administrative action to controvert its given word and end up with any degree of honor. We cannot have dishonorable government. We cannot have reneging on plea bargains. This is the teaching of the United States Supreme Court in *Santobello*. Having secured this rancher's plea of guilty, the State of South Dakota proceeded to break its word. An old rancher just can't figure this out and neither can I. Our past cases have indicated that there is a separation between the judicial proceedings and administrative proceedings. *See In re Malone*, 387 N.W.2d 547 (S.D.1986); *In re Mehrer*, 273 N.W.2d 194 (S.D.1979). These cases are not convincing in this context. The *Mehrer* case involved the allegation that a DWI conviction and punishment precluded separate punishment under the implied consent law. *Malone* dealt with an implied consent penalty inflicted where the defendant was not charged with a second-offense DWI, but there was no plea bargain involved. Here, we are looking at a subsequent punishment for a second DWI, where the second DWI conviction is infirm. The State's Attorney and magistrate gave appellant what they had no right to offer, per SDCL 32–23–3. The State in its plea bargain, in effect, offered "nothing." However, appellant gave up a jury trial. This rancher believes that he has been dishonorably treated by the Court System be-

cause of the plea bargain which he honestly entered into, whereby he was to receive only a first offense DWI and a work permit to drive. I well can understand why this rancher cannot understand why a plea bargain (in the old days it was a handshake) is not being honored by the State of South Dakota as the result of an agency in Pierre shredding the import of the plea bargain. Furthermore, in front of this rancher, a circuit court judge told this rancher that he met all of the requirements necessary to entitle him to a restricted permit. The circuit court judge went further and told the rancher and his lawyer that the government agency was relying on an outdated regulation. This is all found in the record of the proceedings below. If this was not enough to build up in the mind of this rancher that he was entitled to make a plea bargain and obtain a driving permit for work, the circuit court judge criticized any blanket denial of a restricted permit by the government agency pursuant to its regulations and expressed that, in the court's opinion, the rancher was entitled to a work permit under the circumstances. After all of this psychological buildup, a spark from the gavel struck him mightily, for he was told that, even though the circuit judge harbored all of these beliefs and feelings, that he, the circuit court judge, did not have the authority to grant the rancher's application for a restricted license. There is privity between government officials, in many circumstances. *Mehrer*, 273 N.W.2d at 197–99 (Zastrow, J., and Morgan, J., concurring specially); *see generally People v. Staten*, 158 Ill.App.3d 971, 110 Ill.Dec. 761, 511 N.E.2d 938 (1987). As the guilty plea was secured through misrepresentation, however innocent, the conviction cannot stand. It may well be that there is little benefit to appellant here, as he may well be convicted again on remand, but his guilty plea should have been set aside, even after sentencing, per SDCL 23A–27–11. While this matter was not argued on appeal, the right to a fair trial is a constitutional issue, S.D.Const. art. VI, § 7, raisable by the court, sua sponte. Twice, most recently, this Court has, sua sponte, raised important constitutional issues, so there is

precedent for my writing. *See State v. Jones*, 406 N.W.2d 366, 367–68 (S.D.1987); *Bayer v. Johnson*, 349 N.W.2d 447, 449–50 (S.D.1984).

This Court has held that subsequent action by a duly authorized agency, a parole board, which may affect a sentence's duration, is sufficient to destroy a plea bargain where that action could disappoint a defendant's reasonable expectations. *Lohnes*, 344 N.W.2d at 689. While the subsequent State action contemplated here, the Department's denial of a limited license, is not an integral part of the sentence as was the case in *Lohnes*, this only aggravates the unfairness. Here, appellant received, on the surface, what he asked for, but was later ambushed by the Department. In *Lohnes*, at least the defendant was forewarned. In *Santobello*, the United States Supreme Court remanded the case to the state court, as the state court was better situated to decide the appropriate remedy, either:

a) Specific performance of the plea agreement, or

b) allowing the defendant to withdraw his plea.

*Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 499, 30 L.Ed.2d at 433. *See also* ABA Standards for Criminal Justice 14–2.1(b) (2d ed. 1980), and 2 Wharton's Criminal Procedure § 340 (C.E. Torcia 12th ed. 1975), for withdrawal of plea where there has been a manifest injustice. Here, the plea bargain was itself so lacking in legal foundation that it cannot be enforced. It poisons the system of justice. However, neither can the conviction, the sentence, and the second Departmental license revocation stand, all of which stemmed from that tainted plea bargain. Nonetheless, this neither affects the initial revocation by the Department nor the later denial of the limited license because this Court has historically recognized the separation of administrative agencies and courts power on revocation of license. *See Malone*, 387 N.W.2d 547; *Mehrer*, 273 N.W.2d 194.

Long ago, this Court held in an illegal contract case that " 'the doctrine of ultra vires does not absolve municipal corpora-

tions from the principles of common honesty.' " *Slagle v. Elk Point Independent Consol. Sch. Dist.*, 40 S.D. 73, 78, 166 N.W. 234, 235 (1918) (citation omitted). The same should apply here. The State cannot secure a guilty plea by totally misleading a defendant.