Bernard M. HAUTALA, Plaintiff and Appellant,

v.

Phyllis J. HAUTALA, Defendant and Appellee.

No. 15632.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 1987.

Decided Jan. 6, 1988.

Kenneth E. Jasper of Jasper Law Office, Rapid City, for plaintiff and appellant.

Wm. Jason Groves, Rapid City, for defendant and appellee.

SABERS, Justice.

Bernard Hautala appeals a divorce decree claiming the trial court committed reversible error in allowing hearsay testimony about his military pay, in considering nongarnishable income in computing child support and alimony, and in awarding Phyllis rehabilitative alimony.

*Facts*

Bernard and Phyllis had been married almost nineteen years at the time of trial. Bernard was a Master Sergeant in the United States Air Force with over nineteen

years of active service. Phyllis worked sporadically at minimum wage jobs after their children were born. They were both high school graduates. Bernard had fifty-seven semester hours of college. Phyllis had recently completed an adult education course in computers and two college level courses. They have three sons, who were aged sixteen, fifteen, and eight at the time of trial.

The principal marital assets were the marital residence, valued by the court at $54,000, household furnishings, and Bernard's military retirement. Bernard was only a few months from achieving twenty years in the service, making him eligible for retirement. However, his then current duty assignment in Germany required him to remain in the Air Force for a period beyond twenty years.

The trial court found that Phyllis suffered chronic health problems, but that these problems did not disable her or prevent her from working full time. Phyllis was unemployed, but had been seeking employment. She was also interested in pursuing further education, but had not decided on a specific goal.

The trial court determined that each party was entitled to a divorce but that Bernard was marginally more at fault as a result of an extramarital relationship.

The trial court awarded legal custody of the three boys to both parties, with physical custody to Phyllis. She was given possession of the residence until the youngest son becomes an adult. At that time the equity in the home is to be divided equally. Bernard was ordered to pay $690 per month in child support and $210 per month for ten years as rehabilitative alimony. Using a formula which considered length

of military service, length of marriage, and the overlap of the two, the trial court awarded Phyllis 42% of each of Bernard's future military retirement payments.[1] Bernard does not challenge the property division which includes this 42% of future retirement payments.

1. TESTIMONY ON MILITARY PAY ALLOWANCES AND ENTITLEMENTS FROM A MILITARY AUDITOR.

Sergeant Ames, a military auditor from Ellsworth Air Force Base, was called by Phyllis to testify about specific military pay allowances and entitlements which Bernard was receiving. Bernard claims that Sergeant Ames' testimony was hearsay which was either inadmissible or admissible only under SDCL 19–16–28 or SDCL 19–16–35. If admissible under these statutes, Bernard argues that Ames' testimony should have been excluded because Phyllis did not give him advance notice of her intent to present this testimony. He disputes Ames' testimony concerning the amounts of the entitlements, claiming changes in residence and marital status will alter the amounts received. This contention goes primarily to credibility not admissibility. Phyllis contends that even if the admission of Sergeant Ames' testimony was error, it was harmless error because the trial court's findings are substantiated by Bernard's testimony. In his reply brief, Bernard also contends that Phyllis waived this argument because of a failure to cite any authority for her argument.

■ We find little merit in Bernard's argument. Sergeant Ames' testimony is closer to expert testimony than inadmissible hearsay. Admissibility of expert opinion

1. In arriving at a figure of 42%, the court utilized the following formula: *length of marriage* (projected) length of military service × ½.
The trial court's actual calculation was
  *226 months of marriage*
  271 months of military service = 83% divided by ½ is roughly 42%. A similar formula is proposed in 3 Rutkin, *Family Law and Practice* § 43.14[3]. However, under the Rutkin formu-

la, Phyllis would be entitled to 60% of each retirement payment. Although these or similar formulas are not to be applied mechanically, they are permitted if used as a guideline. *Tesch v. Tesch,* 399 N.W.2d 880, 884 (S.D.1987); *Saint-Pierre v. Saint-Pierre,* 357 N.W.2d 250, 257 (S.D. 1984); *Krage v. Krage,* 329 N.W.2d 878, 879 (S.D.1983).

testimony is within the discretion of the trial court. SDCL 19-15-2; *Matter of J.L.H.*, 316 N.W.2d 650 (S.D.1982). Because of Sergeant Ames' position, training, and experience, his testimony was beneficial in aiding the court's understanding of military payments.

## 2. CONSIDERATION OF NONGARNISHABLE MILITARY PAY ALLOWANCES AS INCOME FOR COMPUTING CHILD SUPPORT AND ALIMONY.

■ Initially, Bernard argues that SDCL 25-7-7 states that income for child support includes amounts from specific enumerated sources and that none of these enumerated sources include the terms assigned to specific military pay allowances. SDCL 25-7-7 states that sources of income "include": "(1) *Compensation* paid to an employee for personal services, whether called salary, wages, commissions, bonus *or other designations.*" (emphasis added) The wording of the statute appears to be purposefully broad and nonrestrictive to encompass any compensation paid, regardless of what it is called. Additionally, nothing in this section of the statute indicates that the listing of general categories of income is exclusive. The use of the word "include" suggests a legislative intent to encompass other, unlisted sources of income.

■ Bernard next argues that federal law and regulations make certain military pay categories exempt from garnishment and such sums should not be considered as income to him in computing child support and alimony awards. To accept Bernard's argument would mean that regardless of how much income a party receives, such sums cannot be considered if those sums could not be garnished at their source in the future.

Regulations promulgated pursuant to 42 U.S.C. § 659 (1975) (which provides for enforcement of support obligations of federal employees) clearly state that military pay designated "basic allowance for quarters" and "basic allowance for subsistence" are not garnishable. 5 C.F.R. § 581.104(h)(2) (1980). The record shows that the trial court did include the monthly sums for quarters and rations paid to Bernard in calculating his net income. However, the federal laws and regulations cited above are not in conflict with our state statutes on child support. In *Rose v. Rose* 481 U.S. ——, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), a disabled veteran, whose income consisted of veterans' and other federal benefits, appealed a finding of contempt for failure to pay child support on the grounds of preemption of federal law. The veteran argued, as one basis for preemption, that federal law prohibits garnishment of veterans' disability benefits and thereby embodies a congressional intent that such benefits "not be subject to *any* legal process aimed at diverting funds for child support[.]" (emphasis in original) 107 S.Ct. at 2038. The Court stated "[W]hile it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support." 107 S.Ct. at 2039. The Court noted that the purpose of these federal laws was to avoid sovereign immunity problems, not to shield income from valid support orders.

Bernard's Leave and Earnings Statement ("the military equivalent of a pay stub." 3 Rutkin, *Family Law and Practice* § 4306 (1987)) was before the trial court as his Exhibit # 2. The pay allowances, both designation and amount, were presented to the trial court. Although Bernard disputes the continuing amounts and the garnishability of certain of these pay allowances, he does not dispute that he *is* paid these sums. Therefore, the trial court was correct in including these items of compensation as income under SDCL 25-7-7.

## 3. REHABILITATIVE ALIMONY OF $210 PER MONTH FOR 120 MONTHS.

■ We have discussed the issue of rehabilitative alimony in numerous cases. In

determining alimony and division of property, the trial court must consider: (1) the length of the marriage; (2) the respective earning capacity of the parties; (3) the financial condition of each, after the division of the property; (4) the respective age, health, and physical condition of the parties; (5) the station in life and social standing of each; and (6) the relative fault of each in the termination of the marriage. *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984); *Goehry v. Goehry*, 354 N.W.2d 192 (S.D. 1984).

The trial court found that:

(1) the parties had been married almost 19 years at the time of trial;

(2) Bernard's net income was $1,900.00 per month and he had a better income-earning potential; Phyllis was presently unemployed and would only be able to earn income at a minimum wage without enhancement and rehabilitation of her skills;

(3) an equal division of the equity of the home after the youngest child reaches his majority was appropriate; personal property was to be divided to give Bernard approximately $2,600 and Phyllis approximately $6,700 (which included a vehicle for her use and one for the use of the children); Phyllis was entitled to 42% of Bernard's future retirement payments;

(4) both parties were 41 years of age at the time of trial and Phyllis' health was fair because of chronic health problems;

(5) the parties had a middle class status and both enjoyed an upper middle class social standing as a result of his military rank;

(6) Bernard bears a greater fault for the termination of the marriage.

Bernard contends that the trial court's award of "reimbursement" or "restitutional" alimony must be set aside because Phyllis did not contribute to Bernard's professional advancement. Bernard uses these terms interchangeably. Bernard does not cite any reference to nor does the record disclose any reference to "reimbursement" alimony. The trial court consistently refers to "rehabilitative" alimony in its findings of fact and conclusions of law. However, the judgment refers to "rehabilitative and restitutional alimony." Although we urge the use of careful and consistent language, the issue is not the name placed on alimony, but whether the record supports the award.

This court has consistently held that rehabilitative alimony is proper where it is necessary "to enable the supporting spouse to refresh or enhance the job skills he or she needs to earn a living." *Saint–Pierre*, *supra* at 262; *see Tesch, supra; Booth, supra; Goehry, supra; Martin v. Martin*, 358 N.W.2d 793, 799 (S.D.1984).

The trial court heard testimony that the skills and experience which Phyllis may have possessed years earlier were outdated. Two witnesses who were familiar with Phyllis' background and the present labor market testified that Phyllis would not be able to obtain better than minimum wage employment without further training or education.

The trial court was also aware that the $900 per month in alimony and child support was insufficient to cover the expenses of Phyllis and the three boys. Phyllis would have to earn approximately $479 per month to meet current expenses.[2]

■ Bernard cites *Stemper v. Stemper*, 403 N.W.2d 405 (S.D.1987), *modified on rehearing*, 415 N.W.2d 159 (S.D.1987), in

2. The rehabilitative alimony awarded is far from excessive. As the trial court noted this "is not an amount that will allow her to stay home. It will be an amount that will assist her in obtaining education, but not enough that she will be able to stay at home and go to school full time. She will be required to work." Because the alimony award is needed to meet basic expenses, Phyllis will be able to continue her education through evening classes only if she earns more than minimum wage—an unlikely prospect without further education or training. This Catch–22 renders the alimony more "subsistence" than "rehabilitative."

support of his argument that the trial court improperly considered his retirement income in awarding alimony. First, both Bernard and *Stemper* wholly fail to point out where or how the respective trial courts supposedly "improperly considered retirement income in awarding alimony." Secondly, *Stemper* has been modified. For these and other reasons (*see* my dissenting opinion in *Stemper* at 409-10, joined by Judge Konenkamp), *Stemper's* authority should be and is severely limited. Phyllis is to receive 42% of the retirement payments as part of the property division. Bernard testified that he could not retire from the military before March of 1988 and that his inclination was to retire at that time. The findings of fact and conclusions of law, based upon extensive testimony at trial, indicate that the trial court presumed that Bernard would remain employed past 1988, either with the Air Force or with a civilian employer. The alimony award would not be paid from the retirement fund, but from his salary, unless he were not employed at all during the remaining eight years of the alimony award (i.e., if he were unemployed continually to age fifty-one). In *Nauman v. Nauman*, 320 N.W. 2d 519 (S.D.1982), this court distinguished the inability to pay support obligations from a simple lack of funds. *Nauman* makes it clear that support obligations will not be eliminated simply because the responsible party chooses not to work or refuses to work.[3]

▮ Phyllis has filed a separate motion for attorney fees, tax and costs. It is verified and itemized as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985). In determining the award of attorney fees, we consider factors such as the property owned by each party, their relative incomes, the liquidity of assets, and whether either party unreasonably increased the time spent on the case. *Storm v. Storm*, 400 N.W.2d 457 (S.D.1987). In light of these factors we award Phyllis $1,255.64 attorney fees.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

Three separate issues are presented by the briefs, and I concur on Issues 1 and 2 as set forth by the majority opinion.

With respect to Issue 3, rehabilitative alimony, I respectfully dissent.

Per Finding of Fact 17, "[b]oth parties have engaged in a course of conduct during the course of the marriage causing the other party grievous mental suffering." Per Conclusion of Law 7, both parties were entitled to a divorce.

*Goehry v. Goehry*, 354 N.W.2d 192 (S.D. 1984), cited by the majority opinion, written by the author of this special writing, is not a rehabilitative alimony case. It does, however, set forth the general criteria for the award of alimony. It further cites to *Owen v. Owen*, 351 N.W.2d 139 (S.D.1984), which holding stands for the proposition that a trial court can, indeed, abuse its discretion and that a decision below must be soundly and substantially based upon the evidence. "The term 'abuse of discretion' refers to 'a discretion exercised to an

---

**3.** A major thrust of Justice Henderson's dissent is that this alimony award should terminate upon Phyllis' remarriage.
   1. This argument was never raised as an issue in the trial court or in Bernard's briefs on appeal. If an argument is waived by failure to cite authority, *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983), certainly waiver exists where no argument is made.
   2. Obviously the reason the argument was not made was that it was considered premature. Phyllis has not remarried. If she does, the question can be considered and decided. *See Marquardt v. Marquardt*, 396 N.W.2d 753 (S.D.1986).
   3. This simply is not an issue on appeal in this case. As Justice Wuest stated in *Swanson v. Dep't of Commerce*, 417 N.W.2d 385 (S.D. 1987): "[w]e should stick to the issues on appeal."

end or purpose not justified by, and clearly against, reason and evidence.'" *Moore v. Moore*, 354 N.W.2d 732, 733 (S.D.1984) (quoting *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981)). It is my contention that the trial court's award of ten years' "rehabilitative alimony" of $210 per month is an abuse of discretion and that the case should be reversed and remanded for an award which would equitably comport with the facts. ·

*Booth v. Booth*, 354 N.W.2d 924 (S.D. 1984), cited by the majority, is a rehabilitative alimony case but approved rehabilitative alimony for a period of fifteen months. This is not good authority to back up the majority's decision.

*Tesch v. Tesch*, 399 N.W.2d 880 (S.D. 1987), cited by the majority, was also written by the author of this special writing. It is a rehabilitative alimony case and the alimony award of $125 per month was for a period of twenty-four months. I do not consider it to be proper authority for an approval of a ten-year rehabilitative award in this case.

In *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 262 (S.D.1984), Justice Wollman cautioned against any rigid, inflexible formula in awarding reimbursement or rehabilitative alimony. A rehabilitative alimony award should make sense and not be based upon any type of formula. Formulas are too mechanistic for Equity, creating inflexible parameters. However the majority may try to mask the fact, it is, in effect, approving a formula of rehabilitative alimony in this case, which is additional grounds for my dissent.

I do not oppose rehabilitative alimony in this case and maintain that this case should be reversed and remanded for the purpose of maintaining rehabilitative alimony for its express purpose which is to permit a person to rehabilitate themselves in a job skill so that the person can earn a living. An award of rehabilitative alimony presupposes a divorced wife's potential or actual capacity for self-support. Surely, ten years is far too extended a period of time to award this type of alimony to rehabilitate a divorced wife. Therefore, in approving this ten-year rehabilitative alimony award, the majority decision, as well as that of the trial court, is inherently flawed, in that it conflicts with the true concept of rehabilitative alimony.[1] Ten years takes on a hue of permanency. With any degree of aptitude and application, appellee should have herself rehabilitated many years before the rehabilitative alimony terminates. Therefore, the trial court's discretion is abused in that *it is clearly against reason and evidence. Herndon*, 305 N.W.2d at 918. In my opinion, this decision is a departure from immediate past precedent in this Court and this award exceeds the bounds of liberality.

Although the majority opinion would suggest or hint at medical problems, the record abounds with the fact that neither party has any major medical problems and the few problems that both have are not debilitating nor do they affect their employability.[2]

The most disturbing aspect of the facts, attending the award of rehabilitative alimony, is summarized by the trial court itself when the trial court reflected from the bench that appellee seemed to have no definite goal, her testimony was consistent with no definite goal, and she had exhibited no desire to go out and support herself. She has, however, previously worked as a payroll clerk. In *Shafer v. Shafer*, 283 S.C. 205, 320 S.E.2d 730 (1984), a trial court's award of rehabilitative alimony of $300 per month for sixty months was remanded by the appellate court to the trial court for a redetermination where there

---

**1.** Rehabilitative alimony is recognized as an alimony payable for a short, specific and determinable amount of time; furthermore, it is to cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support.

*See generally* 24 Am.Jur.2d *Divorce and Separation* § 746 (1983).

**2.** Per Finding of Fact 11, she is capable of "working full time."

was no factual finding as to the rehabilitative goal that the alimony was to serve; and, additionally, where the duration bore no reasonable relationship to wife's educational timetable. Conceded, it is best that she, indeed, principally raise the three children and be a mother unto them and stay home for that worthwhile purpose. Yet, if there is a rehabilitative alimony award, it must be soundly or substantially based upon the evidence. *Owen*, 351 N.W. 2d 139. Appellee called three experts to the stand. All testified that the majority of the wife's problems were related to low self-esteem and marital discord. With training and counseling, all further agreed that a substantial portion of her problems would disappear upon termination of the marriage. With training and counseling, the wife's experts opined that she was capable of obtaining, holding, and advancing in a job as she had the physical and mental abilities to do so. She is forty-one years of age. The wife was groping, as she talked to these counselors, about reconstructing her life, and I can sincerely empathize with her, but it appears that two of these experts directed her efforts toward becoming a CPA; it appears that this would be a professional level that she had not previously aspired to or attempted to bring to fruition. Even were this so, such schooling would not encompass a ten-year period.

A thoughtful analysis of these cases on rehabilitative alimony and the facts of this case do not justify an award of ten years of rehabilitative alimony. Not only is this too long, but the trial court used a fixed formula in arriving at an award. Appellee should be entitled to some rehabilitative alimony, enough to help her make a living in life; however, this "rehabilitative alimony award" equates into, in reality, a $25,200 additional property award. In such regards, it is an unlawful mixture of concepts; rehabilitative alimony and an award of property are totally different awards in domestic relations law in this state, although they may be considered together. *Krage v. Krage*, 329 N.W.2d 878 (S.D. 1983). If this $25,200 ten-year "rehabilitative alimony award" does not amount to an additional property award as I have suggested, then surely it amounts to a type of separate maintenance which is in total conflict with an award of a divorce decree, a divorce having been granted to both of the parties to this litigation. This would conflict with SDCL 25-4-39, which provides: "Though judgment of divorce is denied, the court may in an action for divorce provide for maintenance of a spouse and the children of the parties, or any of them, by the other spouse." *See also* SDCL 25-4-40, prescribing an action for separate maintenance without divorce. Under the latter statute, permanent support may be awarded for the spouse under an action for separate maintenance which was not the case here, as separate maintenance was not awarded (by express words). An allowance for support does exist when a divorce is granted under SDCL 25-4-41.

The October 20, 1986 Judgment and Decree of Divorce awards "rehabilitative and restitutional alimony" in the sum of $210 per month for a period of 120 consecutive months, *see* sixth paragraph thereof. Obviously, the trial court was, once again, confused in its concepts of alimony, for there was no evidence or contentions that the divorced wife had ever made any type of material contributions which required a "restitution"; the majority opinion further confuses the state of this record and husband's contention by reflecting that husband is arguing against "reimbursement" alimony. Husband's brief argues against "rehabilitative and restitutional" alimony, both under Issue 3 of his brief. As I have mentioned above, not only has the trial court erred in awarding ten years of rehabilitative alimony, it likewise erred in awarding restitutional alimony.

SDCL 25-4-41 provides that the trial court may award alimony as is deemed just having regard for the circumstances of the parties. To warrant modification of an alimony award, there must merely be a change of circumstances. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Lambertz v. Lambertz*, 375 N.W.2d 645 (S.D. 1985).

*Wegner v. Wegner*, 391 N.W.2d 690, 692 (S.D.1986). The trial court's ten-year award, even if the ex-wife remarries, forecloses any future trial court from taking in the circumstances of the parties contrary to these last cited authorities. The award is so rigid it prohibits a consideration, in futuro, of a "change of circumstances."

The Decree of Divorce is the final document. Here, it does not incorporate the Findings of Fact and Conclusions of Law, but does mention in the first paragraph that it did enter Findings of Fact and Conclusions of Law on August 29, 1986. In my opinion, this was an oversight on the part of the trial court, and in this case, it creates another confusing aspect. For, in checking the Findings of Fact and Conclusions of Law in the record, Findings of Fact 55, 56, and 57 are revealing. They state:

> Defendant is entitled to alimony in an amount that will assist her in obtaining education, but not enough that will allow her to stay at home and go to school full time.
>
> Alimony in the amount of $210.00 per month for 120 months will assist her in rehabilitating her employment skills. ·
>
> The rehabilitative alimony in the sum of $210.00 per month for 120 months shall not abate should the Defendant remarry.

There is no expression in the Decree of Divorce pronouncing a judgment that the "rehabilitative and restitutional alimony" in the sum of $210 per month for a period of 120 consecutive months shall not abate should the defendant remarry. It is silent in that regard. If, indeed, an appellate reviewer would, by inference, deem that the ex-wife is to receive "rehabilitative and restitutional alimony," and the same is not to abate for a period of ten years even if the ex-wife remarries, then this award becomes even more unreasonable. Appellee-wife could collect alimony from her ex-husband for ten years and could likewise receive support from her new husband. She would be supported by two men at the same time. Were she to remarry and become divorced, nothing could then stop her from asking for alimony from the second husband. Again, this illustrates that the rigidity of the trial court's award forecloses consideration of changed circumstances in the future.[3]

Under the settled law of this state, Judge Konenkamp's attempt to cement and solidify a rehabilitative alimony award for ten years, even though the ex-wife should remarry, should not be upheld. *See Marquardt v. Marquardt*, 396 N.W.2d 753, 754 (S.D.1986). *Marquardt*, a case of first impression, adopted a rule in this state that remarriage of one's ex-wife "establishes a *prima facie* case for termination of alimony payments." *Id.* Under the writing of Justice Morgan, this imposes on the remarried ex-wife a burden to establish that "extraordinary circumstances" exist before the continuation of alimony payments may be ordered. *Id.* Thus, the trial court's decision obliterates recent decisional law.

**3.** Justice Sabers has misperceived the major thrust of my dissent which is that a ten-year "rehabilitative alimony award" is not what it says that it is; a ten-year rehabilitative alimony award extends beyond any possible time-frame for rehabilitation. It is, in actuality, either (1) separate maintenance, or (2) an additional property settlement, without calling it such. Rehabilitative alimony continuing for a period of ten years, notwithstanding remarriage, is highlighted in my writing. Appellant's counsel cited two recent South Dakota cases in his brief contending the trial court considered "impermissible factors" and "did not properly apply the correct criteria" in awarding alimony. True, this special writer studied and found the *Marquardt* decision, but settled law in this state can be considered by justices who write opinions/special writings. Put another way, I am not bound, once a litigant raises an issue, to the legal authorities cited by that litigant. Judge Konenkamp's ten-year rehabilitative alimony award, though the ex-wife should remarry, is an issue, and I do not apologize for studying current case law of this Court. The author's reference to Chief Justice Wuest's statement in *Swanson v. Department of Commerce*, 417 N.W.2d 385, 388 (S.D.1987), is inapposite; furthermore, Chief Justice Wuest's writing in *Swanson* cites his dissenting opinion in *State v. Jones*, 406 N.W.2d 366, 371 (S.D.1987), which is totally unrecognized in two historic, major cases in this Court, *State v. Jones*, 406 N.W.2d 366, and *Bayer v. Johnson*, 349 N.W.2d 447 (S.D.1984).

This case should be reversed and remanded with instructions to the trial court to amend its decree to comport with the decisional law of this state and to take evidence on the rehabilitation goal of ex-wife and the duration of its fulfillment.