Sharon R. MALCOLM, Plaintiff
and Appellant,

v.

Kirk G. MALCOLM, Defendant
and Appellee.

No. 14661.

Supreme Court of South Dakota.

Considered on Briefs Feb. 6, 1985.

Decided April 3, 1985.

Roger A. Coffield of Carr, Zastrow & Pluimer, Belle Fourche, for plaintiff and appellant.

John H. Shepard of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendant and appellee.

WOLLMAN, Justice.

This is an appeal by Sharon R. Malcolm from an order that denied her request that defendant, Kirk G. Malcolm, be held in contempt for his failure to make payments under the terms of a property settlement agreement entered into by the parties and that ordered Kirk to pay child support in the amount of $200.00 per month. We reverse and remand.

The parties were divorced in November of 1979. They stipulated that Sharon would have care and custody of their two minor children, Lyle (born October 14, 1966), and Lisa (born April 1, 1969), and that Kirk would pay child support in the amount of $112.50 per child per month.

The parties also entered into a stipulation and property settlement agreement, incorporated in the decree of divorce, that provided, among other things, that Sharon was to be entitled to remain and reside in the residence owned by the parties until such time as the younger of the two children reached the age of eighteen or until Sharon remarried, whichever event occurred first. The parties further agreed that the rental from the furnished apartment in the basement of the residence would be turned over to Kirk, to be applied on the payments on the mortgage on the residence held by First National Bank of the Black Hills in Sturgis, with Kirk to pay any deficiency in the event the rental payments were not sufficient to cover the mortgage payment.

The agreement also provided that the parties would remain joint owners of the residence until the property was sold, at which time the proceeds of the sale remaining after payment of all costs, the mortgage indebtedness, and a promissory note of the parties be divided equally between the parties, subject further to an additional payment of $1,750.00 to Kirk in return for his assumption of certain outstanding indebtedness.

The agreement further provided that the amount of child support should be increased by the same percentage of any increase in pay that Kirk might thereafter receive. Because of a change of circumstances, Lyle began residing with Kirk in August of 1980. The custody portion of the decree of divorce was amended accordingly on August 25, 1980. Thereafter, Kirk voluntarily raised his monthly support payments for Lisa in accordance with the divorce decree from $112.50 per month to $129.40 per month and ultimately to $150.00 per month.

In late 1981, Kirk terminated his position with the First National Bank of the Black Hills in Sturgis and secured employment with a bank in Montana. Because of a default in the mortgage payments, the First National Bank of the Black Hills indicated that foreclosure proceedings would be commenced. In January of 1982, Kirk prepared, executed, and gave to Sharon the following agreement:

## AGREEMENT

In consideration for signing a deed to the First National Bank of the Black Hills, Sturgis, S. Dak. by Sharon R. Malcolm, conveying any interest she has in real estate property with address of 1826 La-Zelle, Sturgis, S. Dak. 57785, I, Kirk G. Malcolm, hereby agree to pay to Sharon R. Malcolm, the sum of $Two Hundred Dollars every month until she remarries or their daughter, Lisa Pauline Malcolm, attains the age of eighteen, whichever occurs first, this agreement is dated the 12th day of January, 1982.

s/ Kirk G. Malcolm
Kirk G. Malcolm

On February 11, 1982, Sharon signed a quit claim deed conveying to the First National Bank of the Black Hills the residence described in the stipulation and property settlement agreement. In return for the delivery of the deed, the bank released the mortgage on the residence. Kirk remained liable to the bank on other debts. Thereafter, Kirk made payments of $200.00 per month to Sharon or her then landlord in addition to the payment of child support that he made to Sharon through the Meade County Clerk of Court's office.

Kirk discontinued the $200.00 monthly payments in August of 1983, at which time he increased by $50.00 the child support payments made through the Meade County Clerk of Court's office, bringing those payments to a total of $200.00 per month.

On the basis of the affidavits and exhibits introduced at the hearing on the order to show cause why Kirk should not be required to pay $200.00 monthly as a residential allowance, the trial court concluded that the January 12, 1982, agreement was an attempt on the part of the parties to fix

child support for Lisa at $200.00 per month.

Sharon contends that the trial court erred in treating the January 1982 agreement as an agreement to modify child support payments rather than as a contract between the parties to carry out the terms of the property settlement agreement as incorporated in the divorce decree. We agree.

■ The parties' rights to their respective interests in their property were irrevocably fixed by the terms of the divorce decree and could not later be modified by court order. *See, e.g., Rousseau v. Gesinger,* 330 N.W.2d 522 (S.D.1983). Sharon, of course, was entitled to convey her interest in the property. We conclude that the consideration for her agreement to convey her interest to the bank for the satisfaction of the mortgage was Kirk's promise to substitute a $200.00 monthly payment by way of housing allowance for Sharon's property interest in the residence. We reach this conclusion for several reasons.

■ First, in determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties. *Chord v. Pacer Corp.,* 326 N.W.2d 224 (S.D.1982); *Johnson v. Johnson,* 291 N.W.2d 776 (S.D.1980); *Huffman v. Shevlin,* 76 S.D. 84, 72 N.W.2d 852 (1955). In determining the intention of the parties, a court must look to the language that the parties used. *Johnson v. Johnson, supra; Berry v. Benner,* 81 S.D. 610, 139 N.W.2d 285 (1966). As the agreement quite clearly states, the $200.00 monthly payments are to continue until Sharon remarries or Lisa reaches age eighteen, whichever should occur first. If the parties had intended the monthly payments to set the level of child support, there would have been no reason to provide that they should terminate upon Sharon's remarriage. The decree of divorce provides that Kirk's obligation to pay child support terminates when "each child reaches 18 years of age, marries or otherwise becomes emancipated." By the terms of the stipulation and property settlement agreement, however, Sharon's right to live in the mari-

tal residence was to terminate upon the date of her remarriage or Lisa's attaining age eighteen, whichever occurred first. Had the parties intended that the January 12, 1982, agreement be limited to a modification of the child support obligation, the agreement could easily have been written to so provide.

Another test to be applied in determining the meaning of a contract is the construction actually placed on the contract by the parties as evidenced by their subsequent behavior. 17 Am.Jur.2d *Contracts* § 274 (1964); Restatement (Second) of Contracts § 202 (1981).

> If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties. *Janssen v. Muller,* 38 S.D. 611, 162 N.W. 393. The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court.

*Huffman v. Shevlin, supra,* 76 S.D. at 89, 72 N.W.2d at 855.

As indicated above, after the execution of the January 12, 1982, agreement and the February 1982 deed, Kirk began making payment of $200.00 per month to Sharon's then landlord. These payments were made in addition to the child support payments that Kirk was making through the Meade County Clerk of Court's office. Kirk's performance of the January 12, 1982, agreement over a period of seventeen months was thus consistent with the interpretation that the $200.00 monthly payments were in the nature of a housing allowance in addition to and independent of his obligation to make child support payments.

■ Finally, if there is an ambiguity in the January 12, 1982, agreement, that ambiguity should be construed against Kirk, inasmuch as it was he who drafted the agreement. *City of Sioux Falls v. Henry Carlson Co., Inc.,* 258 N.W.2d 676 (S.D. 1977); *Jones v. American Oil Co.,* 87 S.D. 384, 209 N.W.2d 1 (1973).

We conclude, therefore, that the trial court erred in holding that the January 12, 1982, agreement was intended by the parties to fix the amount of child support. Accordingly, we reverse the order inasmuch as it attempted to modify the child support portion of the divorce decree in accordance with the trial court's interpretation of the January 1982 agreement.

This does not mean, however, that upon remand Sharon should be entitled to enforce the January 12, 1982, agreement in the divorce action by means of a contempt citation. As pointed out above, the property rights of the parties were fixed by the terms of the 1979 divorce decree. Thereafter, any modification of those rights could only occur by way of bilateral agreement of the parties as manifested by a valid contractual agreement. Inasmuch as we have interpreted the January 12, 1982, agreement as an enforceable private contract between the parties, Sharon will be required to commence a civil action for whatever amounts may be due her under that contract.

The trial court awarded Sharon $150.00 attorney fees in the order to show cause proceedings. On appeal, Sharon asks that we increase this award to include reasonable attorney fees incurred in bringing this appeal. We note, however, that no separate motion for attorney fees, nor an itemized statement in support thereof, has been filed in connection with this appeal. Accordingly, we have little upon which to base any award of appellate attorney fees. Accordingly, we will limit our award to $500.00.

Following the date of the remittitur in this action, we will not consider a request for attorney fees on appeal in domestic relations cases unless there is submitted to us a separate motion, accompanied by counsel's verified itemized statement of costs incurred and legal services rendered.

The order appealed from is reversed and the case is remanded to the circuit court.

MORGAN and HENDERSON, JJ., concur.

FOSHEIM, C.J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur specially.

WUEST, Acting Justice (concurring specially).

I concur with the result in this case, and agree that contempt cannot be used to collect the past due housing allowance because no order was entered, which has been violated. However, the court could, in my opinion, enter an order based on the January 12, 1982, supplemental agreement which, if later violated, could under appropriate circumstances be enforced by contempt.

I agree with the majority opinion regarding future allowances for attorney fees. A past decision indicates judges are possessed of special expertise in fixing attorney fees. *See Scott v. Hetland,* 51 S.D. 552, 215 N.W. 778 (1927). I doubt that; but, in any event, in the future we should have some type of evidence or basis for reaching a conclusion rather than resorting to "ballpark" figures.

I am authorized to state that Chief Justice FOSHEIM joins in this special concurrence.