Karon J. (Anderson) WILSON,
Plaintiff and Appellee.

v.

William (Bill) WILSON, Defendant
and Appellant.

No. 16148.

Supreme Court of South Dakota.

Considered on Briefs Oct. 13, 1988.

Decided Jan. 11, 1989.

Kenneth D. Bertsch of Ulmer & Hertz, Menno, for plaintiff and appellee.

Gary W. Conklin, Lake Andes, for defendant and appellant.

MILLER, Justice.

## ACTION

William Wilson (Bill) and Karon J. Wilson (Karon) were granted a divorce in 1987. Bill appeals provisions of the divorce decree relating to the property division and alimony award. We reverse and remand.

## FACTS

Karon and Bill were married in 1976. After their marriage the parties lived in various locations until settling in Missouri where their daughter (approximately age 7 at the time of the divorce) was born. In 1982 while still residing in Missouri, the parties purchased an acreage (including a farmhouse and outbuildings) near Viborg, South Dakota. Karon moved to the acreage while Bill continued working in Missouri where he intended to stay until an anticipated layoff would permit him to join his family. However, Bill subsequently secured employment in Montana and later in Pierre, South Dakota, and was able to make only periodic visits to Viborg. By the end of the marriage, Bill and Karon had lived apart for approximately five years.

At the time of the divorce, Bill was still living and working in Pierre, South Dakota, where he had purchased and furnished a trailer and was essentially maintaining his own household. Karon was living on the acreage where she was attempting to develop a small herd of livestock which had not yet earned a profit. Karon did have a part-time job where she earned approximately $100 per month. Bill's net pay per month was $1,900.

According to the trial court's findings of fact and conclusions of law, Karon contributed 40 per cent and Bill 60 per cent toward accumulation of marital assets. As will be noted later, the trial court assigned conflicting values to the marital assets. Bill was awarded property valued at $9,480 and was also made responsible for payment of the remaining $7,500 balance owed on the acreage. Karon was awarded total property valued at $42,923.82. Out of this award, $17,709.53 was considered Karon's equitable share of the property division. The remaining property awarded to Karon was divided into different categories of alimony: $7,200 was designated "rehabilitative alimony"; and, $18,014.29 was desig-

nated "permanent or restitutional alimony."

## ISSUE ONE

■ Whether the trial court erred in its valuation and division of the marital assets?

Prior to reaching his substantive arguments concerning the alimony award, Bill contends that the trial court's findings of fact and conclusions of law are inconsistent as to the value of the marital assets. We agree.

By simply totaling the figures concerning the property division and alimony award in the trial court's findings of fact and conclusions of law, it is readily apparent that there is an error. The trial court's findings of fact assigned a total value to the marital assets of $44,273.82 yet it divided $52,403.82 worth of property between the parties. Moreover, the trial court's findings of fact and conclusions of law specifically incorporated by reference its memorandum opinion and an addendum thereto. According to these documents, the total value of marital assets was $33,-386.91. The memorandum opinion and addendum also contain different values concerning the total amount of property awarded to Karon, the amount deemed her equitable share, and the amount deemed "permanent or restitutional alimony."

This court's standard of review with regard to the valuation of marital assets is whether the trial court divided the assets in an equitable manner. *Herrboldt v. Herrboldt*, 303 N.W.2d 571 (S.D.1981). The only time that this court will interfere with the valuations as determined by the trial court is when the trial court has made a clearly erroneous valuation finding. *Id.* The foregoing inconsistencies render the trial court's findings clearly erroneous and prevent an appropriate, meaningful review as to the equity of the property division. Therefore, it is necessary to remand this matter to the trial court for clarification as to the following values: the total value of marital assets; the total value of property awarded to Karon; of the property awarded to Karon, the amount deemed her equitable share, the amount deemed rehabilitative alimony, the amount deemed restitutional alimony and the amount deemed permanent alimony.*

## ISSUE TWO

Whether the trial court abused its discretion in awarding Karon "rehabilitative alimony" and "permanent or restitutional alimony?"

■ This court will not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D. 1988); *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D.1988). Bill argues that the trial court abused its discretion in awarding Karon rehabilitative alimony because there was no showing that she relinquished her occupational status or job skills as a result of the marriage. Bill further contends that it was an abuse of discretion to award Karon restitutional alimony because there was no showing that she contributed to Bill's training or education.

Bill's arguments require that we set forth the distinctions between the various categories of alimony awarded by the trial court in this matter. We must also delineate the appropriate factors to be considered in awarding each category of alimony.

■ Generally, alimony is an allowance for support and maintenance, having as ". . . its sole object the provision of food, clothing, habitation, and other necessaries for the support of a spouse." 24 Am. Jur.2d Divorce and Separation § 520 (1983). *Rehabilitative alimony* is awarded to enable a former spouse to refresh or enhance the job skills he or she needs to earn a living. *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988). The purpose of rehabilitative alimony is to put a spouse in a position to upgrade his or her economic marketabili-

---

* We note that the trial judge is now retired and appreciate that this will be a difficult task for a different judge.

ty. *Bradeen v. Bradeen,* 430 N.W.2d 87 (S.D.1988). The purpose of *restitutional alimony* (also called reimbursement alimony) is to reimburse one spouse's contribution during the marriage to the advanced training or education of the other spouse. *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984).

■ Certain factors must be considered by a trial court in making a general award of alimony: the length of the marriage, earning capacity of the parties, financial condition after the property division, age, health and physical condition of the parties, the parties' station in life or social standing, and fault. *Henrichs, supra; Baltzer, supra.* Additional factors must be taken into consideration in awarding rehabilitative alimony or restitutional alimony. These factors are outlined in *Saint–Pierre,* 357 N.W.2d at 262:

> ... the trial court should consider all relevant factors, including the amount of the supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the non-supporting spouse's professional education.

■ In this instance, we perceive three problems with the alimony awarded to Karon by the trial court. First, Karon was awarded "rehabilitative alimony" with only passing consideration given to the factor of relinquishment of professional or vocational skills. Second, a portion of the alimony awarded to Karon was categorized as both "permanent or restitutional alimony." As noted above, alimony and restitutional alimony involve different purposes and require consideration of separate factors to support the award. Third, Karon was awarded restitutional alimony with no consideration given to the factor of Karon's contribution to Bill's advanced training or education or to the factor of the duration of the marriage following Bill's completion of his education. Therefore, we conclude that the alimony awarded to Karon by the trial court must be totally reconsidered and supported by appropriate findings as to each category of alimony awarded.

In reaching this conclusion we are mindful of the past reluctance of this court to interfere with an award of alimony because it has been miscategorized or because the category of alimony awarded is not supported by applicable findings. In *Hautala,* 417 N.W.2d at 882, we stated, "... the issue is not the name placed on alimony but whether the record supports the award." Recently in *Bradeen,* 430 N.W.2d at 89, we said, "[c]ategories (reimbursement and rehabilitative) are to be used as guidelines by the trial court for setting the method and defining the purpose of such payments. Misapplication of a guideline is not reason for reversal except in extreme examples of an abuse of discretion."

In both *Hautala* and *Bradeen,* however, this court was able, through careful analysis of the record, to identify the category of alimony the trial court intended to award despite its miscategorization. Further, we were able to find facts in the record justifying the award of the category of alimony intended. Here, the record is devoid of facts supporting an award of restitutional alimony and the facts supportive of an award of rehabilitative alimony are minimal. Accordingly, it is necessary to remand this matter for further consideration.

### Attorney's Fees on Appeal

Both parties have filed motions for attorney's fees on appeal. Both motions are accompanied by itemized statements of costs incurred and legal services rendered as required under *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985).

Factors to be considered in awarding a party attorney's fees on appeal are outlined in *Senger v. Senger,* 308 N.W.2d 395 (S.D. 1981):

> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

Based upon our application of these factors to the instant case, we conclude that each party should be responsible for their own attorney's fees on appeal. Accordingly, both parties' motions for attorney's fees are denied.

The divorce decree is reversed and remanded to the trial court for further consideration of the property division and alimony award.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON and SABERS, JJ., concur specially.

HENDERSON, Justice (specially concurring).

Although I concur in the result of this writing, there are cases cited to support its holding which, over a period of a decade, I have academically disagreed with, so do not wish to place my imprimatur on those holdings.

In *Baltzer*, cited in the majority opinion, I concurred specially and set forth a decade of writings and holdings on alimony in this Court. I do not wish to deviate from the spirit of ten years' effort by unconcernedly concurring in this opinion, and so re-adopt, hereby, the spirit of one decade's research and writing.

In *Bradeen*, also cited in the majority opinion, I dissented and set forth seven cases to what I termed the "growing, flourishing alimony business/decisional law of this state." *Bradeen*, 430 N.W.2d at 91. In my special writing in *Baltzer*, I specifically saw fit to set forth the differences between rehabilitative alimony and (a) temporary alimony, (b) reimbursement alimony, (c) permanent support, (d) restitutional alimony, (e) property awards, and (f) child support, by citing special writings in this Court. *Baltzer*, 422 N.W.2d at 592.

By referring to the special writing in *Baltzer*, ten years of alimony writings in this Court may be gathered for students of domestic relations law in this state; then

seven cases cited in the dissent in *Bradeen* may be added to supplement the history of the flourishing alimony business/decisional law of this state. Since *Bradeen*, two more divorce cases have been handed down by this Court, namely, *Hilbrands v. Hilbrands*, 429 N.W.2d 750, 753 (S.D.1988) (Henderson, J., dissenting), and *Pengra v. Pengra*, 429 N.W.2d 754, 757 (S.D.1988) (Henderson, J., concurring in part and dissenting in part).[1] *Hilbrands*, however, was a divorce case involving property settlement and did not involve alimony. Though virtually all of the assets were accumulated during the course of the marriage in *Hilbrands*, this Court affirmed a 70% award of property to wife and 30% award to husband. I decried unfair treatment to men in divorce cases in South Dakota, and expressly said so, *Hilbrands*, 429 N.W.2d at 754. In *Pengra*, the circuit judge had the temerity (apparently), under the evidence, to reduce alimony payments, after full hearings, from $725 per month to $594.50 per month. This Court, predictably, reversed this reduction in alimony to which I dissented. My dissent, *inter alia*, was based upon the fact that a professor had attained the age of sixty years and earnestly desired to cut down his workload. But the message rang out clearly: Work on, work on for alimony.

In this case, due to mixed signals emanating from this Court over a period of years, a circuit court judge, who is now retired, was clearly unable to distinguish permanent alimony, rehabilitative alimony, and restitutional alimony. In *Hautala*, cited in the majority opinion, and distinguished in my special writing in *Baltzer*, I analyzed previous decisions, cited in the majority in *Hautala*, for the proposition that the cited decisions in the *Hautala* majority were inapposite. Said case was decided January 6, 1988. As my Indian Brothers say, not too many moons ago. I called the majority opinion inherently flawed and I was opposed to the ten-year rehabilitative alimony award for the reason

1. Hopefully, these above citations should inform the reader of an up-to-date bibliography of alimony cases in this state.

that it is contrary to all respectable authority in the United States. In citing *Shafer v. Shafer*, 283 S.C. 205, 320 S.E.2d 730 (1984), a respectable authority's decision was highlighted for its rationale that

> a trial court's award of rehabilitative alimony of $300 per month for sixty months was remanded by the appellate court to the trial court for a redetermination where there was no factual finding as to the rehabilitative goal that the alimony was to serve; and, additionally, where the duration bore no reasonable relationship to wife's educational timetable.

*Hautala* dissent, 417 N.W.2d at 884–85.

In my opinion, one of the reasons that the circuit court judge either erred or mistakenly awarded the wrong kind of alimony was because of this statement in *Hautala*, 417 N.W.2d at 882: "[T]he issue is not the name placed on alimony, but whether the record supports the award." I deplored that all-sweeping generic language then, and I deplore it now. It is like saying, "Let's award her alimony, but the name we put on it doesn't make one particle of difference." Well, those words have come home to roost in the case now before us. Further, I deplore this lack of clarity of expression and language because it permits trial judges to loosely award alimony. For years, I have written and tried to distinguish the *conceptual theory/reasons* underlying an award of alimony, which reasons create the type of alimony to be or not to be awarded. If you pursue a general, misty, sweeping viewpoint towards an award of alimony, without riveting in on the facts and the purpose of the award, as a judge or Justice or lawyer, you get caught in a conceptual trap. I am further opposed to these awards of alimony being based upon the citation of secondary authorities, such as a broad statement in a treatise like C.J.S. or Am.Jur.2d. True, they are indeed respectable authorities. However, alimony awards, like all cases, must be based upon a case-by-case analysis. These general statements should be the beginning of the research, not the end. Relying on encyclopaedias, can bog you down—stifling the specifics of an issue. It can obscure the case-by-case analysis which

is so vital to a good judgment. For this Court to now reaffirm bad law on the books (*Hautala's* wide-sweeping declaration), which is an open sesame to error for trial judges in the future, is somewhat akin to watching a carpenter hit himself, with a hammer, twice on the thumb.

SABERS, Justice (specially concurring).

As the author of *Hautala*, Justice Henderson's writing in *Wilson* gives me the feeling of "being stoned to death with popcorn." Justice Henderson may think he is watching the court hit itself with a hammer, but closer examination may reveal that he is the carpenter hitting himself with his hammer on his thumb.