**Dolores E. PARSONS, Plaintiff and Appellee,**

v.

**Roger Russell PARSONS, Defendant and Appellant.**

**No. 17157.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1991.

Decided May 1, 1991.

Donald H. Breit of Breit & Binger, Sioux Falls, for plaintiff and appellee.

Gary P. Thimsen of Woods, Fuller, Schultz & Smith, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

In this divorce appeal, we reverse an award of rehabilitative alimony and remand for further proceedings.

## FACTS

The parties were married on May 25, 1967. Dolores is fifty-five years old and Roger is forty-five. Three children were born to the marriage, one of whom is emancipated. Joint custody of the two younger children (approximate ages 14 and 13) was, by stipulation, granted to the parties, with primary custody in Dolores.

The parties stipulated that a divorce could be granted to both parties on the grounds of irreconcilable differences. Thus, in adopting the stipulation, the trial court made no finding of fault.

The trial court made an equal division of the marital property, with each receiving approximately $209,650. In that division, Roger received the marital home and paid Dolores about $42,320 as one-half of the net equity therein. The balance of the property included, among other things, mutual funds, savings accounts, and other reasonably liquid assets.

Both parties have college education. At the time of the marriage, Roger had a bachelor's degree in business administration and Dolores had a two-year degree in nursing. In 1989, she received her BS in nursing, and is presently working on her master's degree. During the marriage, Roger attained his master's degree (he asserts in his brief that it was at his employer's expense, but there is no support for that in the record).

As will be more specifically detailed later herein, the trial court found that their combined monthly income was $4,731, with seventy-four percent thereof attributable to Roger.

The trial court awarded Dolores rehabilitative alimony of $13,420 payable as long as she remains in school, at $500 a month. It additionally required Roger to pay Dolores $500 per month for a period of two years "as alimony," because her income will be down due to health and the necessity of undertaking education.

Roger appeals the alimony award.[1]

---

1. He has also appealed other holdings, including the child support award, property valuation, de-

## DECISION

### THE ALIMONY AWARD WAS NOT SUPPORTED BY THE FINDINGS.

The trial court's alimony award in the judgment stated:

9. That [Roger] shall pay to [Dolores] as rehabilitative alimony, the sum of $13,420, payable so long as [Dolores] remains in school, at $500 per month. [Roger] shall also pay to [Dolores] the sum of $500 per month for a period of two years as alimony. Said alimony payments to commence on February 15, 1990.

We must observe that irrespective of how the trial court characterized it, the above was, as a matter of law, *entirely rehabilitative alimony.* See *Wilson v. Wilson,* 434 N.W.2d 742 (S.D.1989); *Bradeen v. Bradeen,* 430 N.W.2d 87, 90 (S.D. 1988) (Miller, J., concurring in result); *Hautala v. Hautala,* 417 N.W.2d 879, 882 (S.D.1988).

■ " 'Alimony' is an allowance for support and maintenance having as '. . . its sole object the provision of food, clothing, habitation, and other necessaries for the support of a spouse.' " *Wilson, supra* at 744, *citing* 24 Am.Jur.2d Divorce and Separation § 520 (1983). On the other hand, rehabilitative alimony is awarded to enable a former spouse to refresh or enhance the job skills he or she needs to earn a living. *Wilson, supra; Hautala, supra; Tesch v. Tesch,* 399 N.W.2d 880 (S.D.1987); *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984); *see also Martin v. Martin,* 358 N.W.2d 793, 799 (S.D.1984); *Goehry v. Goehry,* 354 N.W.2d 192 (S.D.1984); *Booth v. Booth,* 354 N.W.2d 924 (S.D.1984). Rehabilitation alimony's purpose is to put a spouse in a position to upgrade his or her

nial of his attorney fees, and the trial court's setting aside of a prior stipulation. We do not address those issues herein because we conclude that they are totally lacking in merit. The trial court's rulings on other matters are controlled by settled law or there was no abuse of discretion.

**2.** At trial, Dolores testified that her health is from "fair to good." The trial court specifically

economic marketability. *Wilson, supra; Bradeen, supra.*

■ Because the entire alimony awarded by the trial court was related to Dolores' education it was, in reality, an award of rehabilitative alimony. No regular alimony was awarded. We thus make our analysis with that in mind.

■ In making an award of alimony, the trial court has to consider and apply several factors: the length of the marriage; the earning capacity of the parties; the financial condition after the property division; the age, health and physical condition of the parties; the parties' station in life or social standing; and fault. *Wilson, supra* at 745; *Hanks v. Hanks,* 296 N.W.2d 523, 527 (S.D.1980).

■ Several *additional* factors must be considered in making an award of rehabilitative alimony: the supporting spouse's contributions; foregone opportunities to enhance or improve professional or vocational skills; and the duration of the marriage following completion of the non-supporting spouse's professional education. *Wilson, supra* at 745; *Hautala, supra* at 882; *Saint Pierre, supra* at 262.

■ The trial court apparently considered the length of the marriage, their earning capacity (although it all centered around the child support award), their age, health and physical condition.[2] However, there are no specific findings related to financial condition after the property division, their station in life or social standing, fault, foregone opportunities, or duration of the marriage following completion of her professional education. *See Wilson, supra* at 745.

The following is the sole finding of the trial court as it relates to alimony:

found that both are in good health except that Dolores' health "is poorer in that she recently had an operation and has other medical problems." The testimony indicates that she had had knee surgery (which apparently was successful) and that she was concerned that her health might deteriorate, however, there was no specifics in that regard.

## VIII.

[Dolores] is 55 years old and [Roger] is 45 years old. Both are in good health except that [Dolores'] health is poorer in that she recently had an operation and has other medical problems. Both have college educations. [Roger] has a Masters Degree and [Dolores] is presently working on her Masters. [Dolores] requests some rehabilitative alimony to allow her to gain her Masters Degree so that her earnings may be maintained or increased and not deteriorate because of her health problems. After the division of the property and considering the incomes of the parties, [Dolores'] situation for earnings is not as great as that of [Roger's]. [Roger] did obtain his Masters Degree during the course of the marriage, which allowed him to rise in his level of employment. [Roger] (sic) has testified that her educational expenses would be $13,420.00 to obtain her Masters Degree.

Dolores has a nursing degree. In 1987 (prior to the time she received her bachelor's degree), working several overtime hours, she earned $33,000. The trial court found that she is currently employed at $10.99 per hour and if employed full-time she would earn $22,000 per year. (The finding also noted that while going to school she would still earn seventy-five percent or $16,500 per year.) Further, she receives investment income of $375 per month, which when added to $1,375 (based on $16,500 per year) would amount to gross monthly earnings of nearly $1,750, with a net of approximately $1,450 per month.[3]

When considering the definition and purpose of rehabilitative alimony, coupled with the factors which must be applied, the trial court's findings (even including the foregoing income calculations included in the child support calculation finding) are inadequate to support the award. *See Wilson, supra* at 745.

We cannot, and do not, say that no alimony or rehabilitative alimony is appropriate. We reiterate that the findings do not support the award. We therefore reverse and

remand with instructions to reconsider. (The remaining issues raised by Roger are specifically affirmed—see footnote 1).

HERTZ, Circuit Judge, acting as a Supreme Court Justice, concurs.

HENDERSON, J., concurs specially.

WUEST and SABERS, JJ., dissent.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

HENDERSON, Justice (specially concurring).

There appears to be no evidentiary showing that wife's health is deteriorating (Settled Record, page 106) nor is there any evidence that she had to forego her professional skills to enhance his. She has ⅕ of a million dollars in assets and has a Bachelor of Science degree in Nursing and is obtaining a Masters degree. She has an excellent salary plus a monthly investment income. Without any question, she has economic marketability.

She needs rehabilitative alimony? For what? What is there to rehabilitate, conceding that she has economic marketability now? Rehabilitative alimony has, as its purpose, to enable a former spouse to refresh or enhance the job skills he or she needs to earn a living. *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988).

Findings of Fact must support the Conclusions of Law. *Knodel v. Bd. of Cty. Com'rs., Etc.*, 269 N.W.2d 386 (S.D.1978); *Kirkeby v. Renaas*, 85 S.D. 515, 186 N.W.2d 513 (1971). Here, they do not. Simply put, the findings are insufficient to support the award.

Therefore, I join in the reversal of the circuit court, in accordance with the majority opinion, hereby expressing that under these circumstances, the findings do not support the rehabilitative award; and in my opinion, a rehabilitative award would necessarily be minimal, if anything at all. The trial court should consider all of the facts in this case, particularly her financial

---

**3.** Roger grosses a monthly salary of $4,600 with a net of $3,282.

condition after being awarded a very healthy property division.* Without question, she earns a good salary and the trial court should certainly take this into consideration as well as her $375 per month investment income. Highly doubtful that there is anything to rehabilitate in this case.

SABERS, Justice (dissenting).

I would affirm the trial court in all respects and award $1,000 in appellate attorney fees to plaintiff as successful party under *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985).

The majority opinion unduly tinkers with a well-reasoned memorandum opinion and findings and conclusions which exceed twenty pages. Together, they present a complete and fair approach to the distribution of assets and obligations stemming from this divorce.

The majority opinion cites to *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988) several times but fails to appreciate its message: "Although we urge the use of careful and consistent language, the issue is not the name placed on alimony, but whether the record supports the award." *Id.* at 882.

The record supports this award and we should affirm under numerous recent South Dakota cases.

WUEST, J., joins this dissent.

---

* This Court reviews the award of alimony and property division together. *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D.1988). An abuse of discretion is the scope of review on disturbing an alimony award. It clearly exists in this case.