**Dolores E. PARSONS, Plaintiff and Appellee,**

v.

**Roger Russell PARSONS, Defendant and Appellant.**

**No. 17760.**

Supreme Court of South Dakota.

Considered on Briefs May 29, 1992.

Decided Sept. 16, 1992.

Donald H. Breit of Breit and Binger, Sioux Falls, for plaintiff and appellee.

Gary P. Thimsen and A. Russell Janklow of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

Roger Parsons (Roger) appeals an award of alimony to his former wife, Dolores Parsons (Dolores). We affirm in part and reverse in part.

## FACTS

This matter is again before this court after an appeal and remand in *Parsons v. Parsons*, 469 N.W.2d 581 (S.D.1991) (*Parsons I*). To once again outline the pertinent facts, the parties were married on May 25, 1967. Both parties had college educations at the time of the marriage. Roger had a bachelor's degree in business administration and Dolores had a two year nursing degree. Both parties were employed during the marriage and Dolores worked both full and part time at various times throughout the marriage. Both parties also advanced their educations. Roger obtained his master's degree while Dolores obtained her B.S. in nursing. In addition, three children were born during the marriage.

In 1990, the parties stipulated that a divorce could be granted on the grounds of irreconcilable differences. Dolores was approximately 55 years of age at the time and Roger was 45. One of the three children was emancipated and the parties were granted joint custody of the other two children, primary custody going to Dolores.

The parties' marital property was divided equally, however, Roger received the marital home and was required to pay Dolores for her half of the parties' equity therein. The balance of the property divided between the parties included personal property, mutual funds, savings accounts and other liquid assets. The trial court also awarded Dolores alimony so she could attend school and obtain her master's degree. It awarded her $13,420 payable at the rate of $500 per month as long as she remained in school. It additionally required Roger to pay $500 per month for a period of two years as alimony because Dolores' income would be reduced due to her poor health and school attendance.

Roger appealed the award of alimony in *Parsons I* and we found the entire award rehabilitative because it was all related to Dolores' education. We held that the trial court's findings of fact were inadequate to support the award and reversed and remanded for reconsideration. A remand hearing was held on August 16, 1991 and additional evidence and testimony were taken. On October 25, 1991, the trial court entered findings of fact, conclusions of law and an order again requiring Roger to pay alimony. Roger now brings this second appeal of the alimony award.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN THE ALIMONY AWARD TO DOLORES?

The trial court's alimony order provides:

[Roger shall] pay the sum of $13,420.00 for the education costs of [Dolores]. Further, [Roger] shall pay the additional sum of $500.00 per month for living expenses for two years. Said sums payable at the rate of $1,000.00 per month until paid[.]

■ As we outlined in *Parsons I:*

In making an award of alimony, the trial court has to consider and apply several factors: the length of the marriage; the earning capacity of the parties; the financial condition after the property division; the age, health and physical condition of the parties; the parties' station in life or social standing; and fault.

Several *additional* factors must be considered in making an award of rehabilitative alimony: the supporting spouse's contributions; foregone opportunities to enhance or improve professional or vocational skills; and the duration of the marriage following completion of the nonsupporting spouse's professional education.

*Parsons,* 469 N.W.2d at 583 (citations omitted) (emphasis original). This court will not disturb a trial court's ultimate award of alimony unless it clearly appears the trial court abused its discretion in making the award. *Wilson v. Wilson,* 434 N.W.2d 742 (S.D.1989). Roger asserts the trial court's findings of fact are not supported by, or are contrary to, the evidence and, therefore, the trial court abused its discretion in its alimony award.

■ Our review of the trial court's findings of fact is according to the clearly erroneous standard and we will not overturn the trial court's findings unless we are left with a definite and firm conviction that a mistake has been made. *See, Hilbrands v. Hilbrands,* 429 N.W.2d 750 (S.D.1988). With this standard in mind, the trial court's findings relative to the pertinent factors are outlined below along with the supporting evidence in the record.

*Length of the Marriage*

There is no dispute that the parties were married for twenty-three years.

*Earning Capacity of the Parties*

The trial court found that Dolores earns $1,750 per month and that Roger earns $3,282.60 per month. The findings as to Dolores are supported by her testimony that she was employed at a rate of pay of $10.99 per hour. The trial court calculated that if she were employed full time, Dolores would earn approximately $22,000 per year. However, the trial court reduced this amount based upon its further calculation that Dolores would only be working about seventy-five percent of the time while going to school. Thus, the trial court reduced her annual income to $16,500 per year (i.e., $22,000 × 75%) for a monthly income of $1,375 (i.e., $16,500 ÷ 12). The trial court added investment income of $4,500 per year or $375 per month (i.e., $4,500 ÷ 12) to this amount for a monthly gross income of $1,750 (or net income after taxes of $1,448.50 per month).

The figure of $3,282.60 for Roger's monthly income is supported by his trial testimony that his annual salary is $55,200 per year. This yields a monthly gross income of $4,600 (i.e., $55,200 ÷ 12) less taxes for a monthly net income of $3,282.60. Thus, there is ample evidentiary support for the trial court's findings as to Roger's income.

The trial court also found Dolores' earning capacity would substantially increase if she obtained her master's degree because of her previous employment by the Veterans Administration as a nurse; because the degree would allow her to work for the federal government past the age of sixty-five; and, because it would allow Dolores employment at a supervisory level with no lifting. These findings are supported by Dolores' testimony during the remand hearing that she owes the Public Health Service two years of time after graduation to repay an education loan. She also testified that with a master's degree she would be employed at a much higher pay scale than she was with a two year nursing degree. Finally, Dolores also testified she would be able to work for the federal government until she was seventy and that she had a guaranteed job with the federal government after receiving her master's degree. Although Roger makes much of the fact that the trial court ignored the testimony of an expert that Dolores' earning capacity would not be enhanced with a master's degree, " '[t]riers of fact are not bound to accept opinion testimony, however expert and authoritative, because opinion testimony is not of the highest order.' " *State v. Baker,* 440 N.W.2d 284, 287 (S.D. 1989) (quoting *People v. English* 29 Mich. App. 36, 48–9, 185 N.W.2d 139, 147 (1970).

*Parties' Financial Condition after the Property Division*

■ The trial court's original property division yielded an equivalent division of marital assets in the amount of $167,331.50 to each party. Thus, the trial court found the respective financial condition of the parties after the property division was essentially equal. Roger's only objection to this finding points to his remand hearing testimony that his monthly expenses are greater than his monthly obligations and that he has no liquid assets because of the property division.

Despite Roger's contentions, the original property division reflects that he was awarded a cash account of $26,000, a credit union account of nearly $13,000, a coin collection valued at $1,000 and a bank account of $2,000. This yields a total of some $42,000 in liquid assets in Roger's possession after the property division. What Roger may have done to deplete these assets after the property division is not a factor in the alimony analysis involved herein. Moreover, Roger has a substantially higher net monthly income than Dolores (some $1,800 higher) and he admitted during the remand hearing that he still has a number of funds in his possession and control that he was ordered to transfer to Dolores in the divorce decree. Therefore, if there was any error in the finding of an equivalent financial condition, it would appear that the error concerned Dolores and not Roger.

*Age, Health and Physical Condition of the Parties*

■ Dolores is fifty-five years of age and Roger is forty-five. The trial court found both parties in generally good health but that Dolores has had surgery on her knees and is unable to lift anything but moderate amounts. The trial court also found Dolores is likely to undergo additional surgeries on her knees in the future.

The findings regarding Dolores' health are supported by her trial testimony that she had had recent arthroscopic surgery on her right knee and that her doctor thought it would be necessary to do surgery on her left knee in a short time. During a deposition after *Parsons I*, Dolores testified that she was having a great deal of trouble with her knee and that she was taking cortisone injections for inflammation and pain killers for pain in the joint. She testified that her doctor anticipated she would need a full knee joint replacement in both knees and that he had told her not to do any heavy lifting and not to go up and down stairs unless she had to. Based on this testimony, there is an adequate evidentiary foundation to support the trial court's findings concerning Dolores' health.

*Parties' Station in Life or Social Standing*

■ The trial court found the parties' status when they were married was that they had a combined income, a new home in Lincoln County, two children to support in school and an essentially equal social standing and station in life. The court further found that the parties' positions did not change after the divorce to the extent Roger still lived in the same house with the two children * and still had the same social status. However, the trial court did find that Dolores had a more limited income; that she had to seek an education at her own expense; that her social standing was similar, but not equal to, what it was before; and, that her station in life had greatly changed.

Although Roger asserts the above finding concerning Dolores is unsubstantiated and inconsistent, the record is clear that the parties are divorced; that they no longer have a combined income; and, that they no longer reside together in a new home in Lincoln county with their two children. The record is also clear that Roger's position has changed the least inasmuch as he continues to occupy the marital home with the two children and continues working for the same company for approximately the same wages. The record is also clear that Dolores has the same social standing as a nurse that she held during the marriage. However, her station in life has changed in the sense that she is no longer a typical occupant of middle class suburbia but a fifty-six-year old, single woman attempting to embark on a new career in a new location.

*Fault in the Termination of the Marriage*

The trial court determined fault was not a factor in the resolution of this matter and that determination is not challenged by Roger.

---

\* Actual custody of the two children was shifted to Roger after *Parsons I* for reasons ungermane to this decision.

*Supporting Spouse's Contributions*

■ The trial court found that Dolores worked full time during the marriage and also served as a housewife and mother. The trial court further found that Roger was not employed during the time he was completing his master's degree and that Dolores provided both the income and child care services to the family during that time. Thus, the trial court determined that Dolores contributed to Roger's ability to obtain his master's degree and to the enhancement of his income earning ability by: her employment during the marriage; her homemaking; and, her child care services.

Roger submits that portions of the above findings are plainly incorrect and we agree. Dolores did testify during trial that she worked throughout the marriage, including the time she was completing her bachelor's degree. Dolores also testified that she felt she had devoted her life to her family and children. However, there is no evidentiary support for the finding that Roger was not employed while he worked on his master's degree and that Dolores provided *both* the income and child care services for the family during that time. To the contrary, the only information we find on the issue in the record is in Roger's pre-trial deposition testimony. He testified that he obtained his master's degree in business administration while working full time *and* going to night school for two years. Thus, the trial court's findings in this respect are clearly erroneous.

*Foregone Opportunities to Enhance or Improve Professional or Vocational Skills*

■ The trial court found Dolores did not pursue additional degrees during the marriage because she was working full time and was also a housewife and mother. Thus, the trial court determined Dolores had foregone the opportunity to enhance her education in order to maintain the household, income and social status of the family during the marriage.

These findings are also clearly erroneous. The record indisputedly establishes that Dolores entered the marriage with a two year nursing degree and obtained her

bachelor's degree in nursing in 1989, *prior* to the parties' divorce. Thus, like Roger, Dolores was able to enhance her professional and vocational skills during the course of the marriage.

*Duration of the Marriage Following Completion of Nonsupporting Spouse's Professional Education*

The trial court found the parties remained married for eighteen years after Roger secured his master's degree and this finding is not challenged on appeal.

## CONCLUSION

■ The trial court's findings do support some award of alimony for Dolores' support given Roger's substantially higher earning capacity, younger age and better health and physical condition. However, the trial court's findings relative to the additional factors pertinent to rehabilitative alimony are clearly erroneous and do not support any award of rehabilitative or restitutional alimony.

*Rehabilitative alimony* is awarded to enable a former spouse to refresh or enhance the job skills he or she needs to earn a living. The purpose of rehabilitative alimony is to put a spouse in a position to upgrade his or her economic marketability. The purpose of *restitutional alimony* (also called reimbursement alimony) is to reimburse one spouse's contribution during the marriage to the advanced training or education of the other spouse.

*Wilson,* 434 N.W.2d at 744–45 (emphasis original). "Rehabilitative alimony must be designed to enable a spouse 'to obtain the educational skills she needs to fend for herself in life.'" *Ryken v. Ryken,* 440 N.W.2d 300, 303 (S.D.1989).

Here Dolores had a two year nursing degree when she entered into the marriage that permitted her to earn a fairly substantial income throughout the duration of the marriage. In fact, just prior to the termination of the marriage, Dolores was able to enhance her nursing skills by earning her bachelor's degree in nursing. Thus, this is not a case where a short term award of

alimony is necessary to permit a spouse to achieve economic self sufficiency or to improve or refresh job skills given up in order to contribute services as a homemaker and mother, the concept underlying rehabilitative alimony that we recognized in *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250 (S.D.1984). Nor is this a case where a spouse contributed her earnings in the early years of the marriage to putting the other spouse through college or professional school, the concept underlying restitutional or reimbursement alimony that we recognized in *Wilson, supra* and earlier in *Saint–Pierre, supra.* Rather, the record reflects that Roger's employer paid for the educational costs associated with obtaining his master's degree and that he himself worked full time while going to night school and, therefore, assisted in supporting his family while he obtained that degree.

Based upon the above considerations, we hold that the trial court abused its discretion in its award of rehabilitative alimony and that that portion of the alimony award concerning Dolores' education costs should be reversed. However, we affirm the general alimony award of $500 per month for two years.

## ATTORNEY'S FEES

Both parties have filed motions for an award of appellate attorney's fees. Both motions are accompanied by itemized statements of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). Factors to be considered in awarding a party attorney's fees on appeal are outlined in *Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981):

> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

Based upon our application of these factors in the instant case, we hold that nei-ther party is entitled to an award of appellate attorney's fees.

Affirmed in part and reversed in part.

HENDERSON and AMUNDSON, JJ., concur.

WUEST and SABERS, JJ., dissent.

SABERS, Justice (dissenting).

I would affirm in all respects. The findings of fact that the majority claims are lacking support in the record are simply not important enough for reversal. As I stated in *Parsons I:*

> The majority opinion *unduly tinkers* with a well-reasoned memorandum opinion and findings and conclusions which exceed twenty pages. Together, they present a complete and fair approach to the distribution of assets and obligations stemming from this divorce.

> The majority opinion cites to *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988) several times but fails to appreciate its message: "Although we urge the use of careful and consistent language, the issue is not the name placed on alimony, but whether the record supports the award." *Id.* at 882.

> The record supports this award and we should affirm under numerous recent South Dakota cases.

*Parsons v. Parsons*, 469 N.W.2d 581, 585 (S.D.1991) (Sabers, J., dissenting) (emphasis added).

This case is starting to remind me of the statement sometimes attributed to Yogi Berra: "This is like *deja vu* all over again." This case may be referred to as *Parsons II* and then again it may be referred to as "Tinker II."

WUEST, J., joins this dissent.