Bobbie L. **JOHNSON**, Plaintiff and Appellee,

v.

John A. **JOHNSON**, Defendant and Appellant.

18364.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1994.

Decided Jan. 4, 1995.

---

120 ■

Lee R. Burd, Sioux Falls, for plaintiff and appellee.

Gary J. Pashby and Gregg S. Greenfield of Boyce, Murphy, McDowell and Greenfield, Sioux Falls, for defendant and appellant.

GROSSHANS, Circuit Judge.

John Johnson (John) appeals the provisions of a divorce decree relating to the alimony award. He does not contend that Bobbie Johnson (Bobbie) is not entitled to alimony, just not so much for so long. Bobbie requests her attorney fees and costs on the appeal. We affirm on all issues.

FACTS

At the time of trial, John was 49 years old and Bobbie was 45. They had been married since November of 1973, almost 20 years. They have one adult child. Prior to the marriage Bobbie completed high school and received a degree from a business college. John holds a Ph.D. in electrical engineering from the University of Nebraska. Bobbie did not work outside the home during the first two-thirds of the marriage. She loved being a housewife and homemaker for John and their daughter. In 1986, she began searching for outside employment. She was able to find various minimum wage type jobs in telemarketing, animal caretaking and working with the parent of a learning disabled child. Apparently, she likes this type of work and she hopes to attend college, obtain a four year degree, and work with learning disabled children. John had completed his education before the marriage. His career has progressed well and presently he is Director of Technical Services at Citibank at an annual salary of $109,000.00.

Neither John or Bobbie have any serious health problems. She can not do any strenuous lifting, but does not plan on doing any in any event. Although he drank on an almost daily basis, it was not always to a point of intoxication. He never lost work, nor did his drinking affect his career advancement. After a second DUI conviction in 1991, he entered an out-patient treatment program. It was during treatment that John told Bobbie that he was not sure if he ever loved her. He apparently had his drinking under control at the time of trial. There was no physical or verbal abuse during the marriage. As the trial court observed, "he really has no complaints at all about her as a wife...." It appears as though John and Bobbie essentially just got tired of each other and decided to go their separate ways. The trial court did not consider fault to be a significant issue in the case. Whatever fault existed was attributed to John.

Their disparate earning ability presents the primary problem facing the trial court. *Caughron v. Caughron*, 418 N.W.2d 791 (S.D. 1988). The trial court was looking at a 45 year old woman who had been a homemaker, wife, and mother for 20 years. She had held a few minimum wage type jobs in the later years. John had a steadily increasing income and was earning around $125,000.00 all inclusive per year at time of trial. If Bobbie attends college and obtains a degree she will be entering the work force at age 50. She has only 15 years remaining for her career. He has the same 15 years plus the past 25 years. In effect, her earning capacity stalled when she married. His was enhanced because he was able to enjoy the benefits Bobbie provided as a full-time wife, homemaker and mother.

During the marriage they accumulated assets worth $372,486 and were essentially debt free except for the home mortgage. Bobbie was awarded 49% of the assets and they were almost all liquid—that is, easily converted to cash. Although John was the one who "brought home the bacon" the trial court found that Bobbie had made an equal contribution because of her having fulfilled the

traditional role of housewife, mother and homemaker. In so doing, she did forego employment opportunities. *Kappenman v. Kappenman*, 479 N.W.2d 520, 523 (S.D.1992).

In determining alimony, the trial court in its oral decision and written findings and conclusions considered the appropriate decisional criteria per *Stubbe v. Stubbe*, 376 N.W.2d 807 (S.D.1985). They both had enjoyed an upper middle class standard of living. They were frugal.

The trial court's opinion was that John "has the ability to pay more alimony than Bobbie needs." The trial court awarded Bobbie $2,500 per month for five years. That was to help her get through the school years. If she does not do so the alimony amount is decreased to $2,000 per month. Then, when her marketability in the labor force has increased, the alimony will be reduced to $2,000 per month for ten years. Thereafter, apparently when she has made some progress in her new career it will decrease to $1,000 per month until Bobbie attains the age of 65. At that point it is set at $100 per month. In other words, it is open for appropriate review by the court at that time in their life when they are considering retirement.

In light of the evidence before the trial court the alimony award was appropriately tailor-made to suit the needs and abilities of the parties and realistic under all the circumstances. *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D.1991). The award was well-reasoned and in conformance with the evidence. An alimony award will not be disturbed absent a clear abuse of discretion. *Parsons v. Parsons*, 490 N.W.2d 733, 736 (S.D.1992).

Bobbie timely filed her request for appellate attorney fees and costs in the sum of $2,187.20. *DeVries v. DeVries*, 519 N.W.2d 73, 78 (S.D.1994). Her request is accompanied by a verified, itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). Considering the criteria as outlined in *Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981), we hold that Bobbie is entitled to recover her costs. Each party is responsible for their own attorney fees.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, Retired Justice, who was a member of the Court at the time this action was submitted, concurs in part and dissents in part.

GROSSHANS, Circuit Judge, for WUEST, J., disqualified.

KONENKAMP, J., who was not a member of the Court at the time this action was submitted did not participate.

HENDERSON, Retired Justice (concurring in part; dissenting in part).

Other than the holding which determines Bobbie Johnson shall not be awarded appellate attorney's fees, for several reasons I cannot support this Court's affirmance of the trial court on the alimony award. Several basic facts and criteria, as well as previous holdings by this Court, were not considered by the trial court; this spawned an excessive amount of monthly alimony and duration, not supported by proper Findings of Fact and Conclusions of Law.

1.

Trial court found in its Finding #7 (and based an alimony award thereupon) that John Johnson "earns approximately $125,000 per year." This finding is unsupported by the testimony. It is erroneous and is subject thereby to reversal. *Bennett v. Jansma*, 329 N.W.2d 134 (S.D.1983). Rather, John's salary has averaged $100,000 for the six years preceding the trial of this action. This $100,000 figure is a time-weighted yearly gross salary, in other words an average salary over a number of years. Furthermore, the trial court considered the inflated *gross* salary and failed to consider a *net* yearly income which was $69,000 per year. Tax returns reflect John as being in a 31% tax bracket, thereby representing the $69,000 *net* income per year. Exhibits 4–7 establish his salary. Awarding alimony on this very inflated figure, unsupported by evidence, is reversible error. Simply put, the facts are other than

found by the trial court. *Hilde v. Flood,* 130 N.W.2d 100 (S.D.1964).

2.

Bobbie Johnson received $183,287.00 (or 49%) of the total marital property aggregating $372,486.00. The said $183,287.00 can be converted to cash with exception of two IRA's totaling $1,200, an automobile and certain personal property. An expert, John Wenande, testified that these property division assets could/would produce well over $10,000 per year, via a 6% rate of return. Thereunder, Bobbie's principal would not be invaded, granting her financial security. *She does not dispute* this (a) award or (b) *an anticipated interest of $10,000 per year.* Trial court failed, by its formal decision, to take this income into consideration. Under settled law in this state, the omission of assets which should properly be included as marital property is an abuse of discretion. *Gibson v. Gibson,* 437 N.W.2d 170 (S.D.1989). It simply overlooked it. A failure to make critical findings requires reversal. *Knodel v. Bd. of County Comm'rs,* 269 N.W.2d 386 (S.D.1978). *Accord Bell v. Midland Nat'l Life Ins. Co.,* 102 N.W.2d 322 (S.D.1960).

3.

Considering the five year alimony award of $2,500 per month, a five year alimony award of $2,000 per month thereafter ("absent meaningful progress") and then a $1,000 per month alimony award for 10 years, followed by a $1,000 per month award until Bobbie attains the age of 65, we are thereby considering an award of $450,000. This award appears to be grounded in John's purported ability to pay without considering Bobbie's actual need. When reflecting upon "need," the trial court made these comments:

(a) "Quite frankly, he has the ability to pay more than she probably needs."

(b) "He obviously can afford it [at $2,500 per month]".

The factors the trial court is to consider in making an equitable division have been established by a long history of settled law in this state. In *Parsons v. Parsons,* 490 N.W.2d 733, 735 (S.D.1992), we set forth these factors: the length of the marriage; the earning capacity of the parties; *the financial condition after the property divi-*

*sion;* the respective age, health, and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage.

Here, *the trial court entered no finding(s) of fact on the respective financial condition after the property division.* This was error under settled law of this state. Considering our settled law, the financial effect of the award of property definitely must be taken into account in awarding alimony. Under *Parsons* and the cases cited therein, failure to do so is reversible error. A rate of return on a property division has been included, in the past, by this Court in cases such as *Baltzer v. Baltzer,* 422 N.W.2d 584, 587 (S.D. 1988), and *Kelley v. Kirk,* 391 N.W.2d 652, 655 (S.D.1986). Without the above criteria factored in, the alimony award is flawed in amount and duration. Upon remand, the trial court should reconsider the alimony award.

4.

In reading through the Findings of Fact and Conclusions of Law, it becomes obvious that the trial court divided (1) "alimony" for five years at $2,500 per month for benefit of completing an education, and (2) "... absent meaningful progress" the "support" would be reduced to $2,000 per month. If this was intended to be rehabilitative alimony, the trial court should have articulated its reasons therefore and also the additional factors. *Tesch v. Tesch,* 399 N.W.2d 880 (S.D.1987); *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984); *Baltzer,* 422 N.W.2d at 594 (Miller, J., concurring in part and dissenting in part). It was not done. This was error under settled law in this state.

Then, the trial court granted $1,000.00 monthly "support" for an additional period of ten years. No factors mentioned or specificity of rationale are sufficiently articulated to justify such an award. Was this an award of general alimony *per se* ? The purpose of this award is not evident from the Findings of Fact and Conclusions of Law. If, indeed, this award was rehabilitative alimony, it was a provision for 15 years of rehabilitative alimony. As we unanimously held in *Tesch,* 399 N.W.2d at 885, it cannot be of long duration

nor excessive in amount. *See Baltzer,* 422 N.W.2d at 593 (Miller, J., concurring in part and dissenting in part); *Saint–Pierre,* 357 N.W.2d at 261; 24 Am.Jur.2d *Divorce and Separation* § 746 (1983).

Also, the trial court entered a fourth provision, without specifying it was "alimony" or "support," denominated a "sum" of "$1,000 per month until plaintiff attains the age of 65" and immediately followed by a fifth declaration that "*support* should be in the sum of $100 per month." *See* Conclusion of Law # 11. One might query: How long does the $100 per month continue? Until death of either party?—I simply do not know. No one does. In the immortal words of a popular ballad of approximately 30 years ago by Peter, Paul & Mary, "the answer is blowing in the wind." It appears the "alimony" or "support" award is open-ended. What if she remarries? This Court in *Hanks v. Hanks,* 296 N.W.2d 523, 527–28 (S.D.1980), held that a failure to limit an alimony provision, upon remarriage, was modifiable error.

Bobbie presented a "game-plan" to obtain a college education. Acting thereupon, the trial court conditioned the first five years of alimony of Bobbie's meaningful progress towards that goal. Viewing the pleadings, it appears Bobbie never requested rehabilitative alimony. As one reviews the Findings of Fact and Conclusions of Law, it becomes obvious that there is no certainty, reasons, or rationale given upon which to fasten a type of award.

The alimony is simply not characterized with reasons therefore. The award appears to be some kind of hybrid. If the award is rehabilitative, it is far too long; if it is a permanent award, it does more than simply "support" her. We have before us, an award of some kind of generic "alimony" or "support" bordering on one-half million dollars. With interest on her "alimony" or "support" payments (which can be deposited in Certificates of Deposit), the award will exceed one-half million dollars. This entire alimony award is not supported by the evidence in this case and it is an over-reaching of great dimension. The *need* for such an award of alimony was never established by testimony or findings of fact. The reasonableness of Bobbie's needs must be established. *Straub v. Straub,* 381 N.W.2d 260 (S.D.1986); *Grant v. Grant,* 57 N.W. 1130 (S.D.1894). Hence, a remand to the trial court is in order.

5.

Bobbie Johnson, during this marriage, following her own dictate and desire, became employed in 1986. She thereafter worked as a telemarketer, animal caretaker, and at the South Dakota Parent Counsel. The latter position involves her counselling the parents of learning-disabled children. Per her "game-plan" to enhance her employment possibilities, she seeks a four-year college education to again, as she testified, ". . . work in early childhood education and with children with learning disabilities." Trial transcript at 35. She followed this calling, a noble one, for one year, working full-time, before the divorce action. Conceding, for purposes of following this train of thought to its conclusion, that she will attain a four-year college education via alimony, it does not appear she will forego any employment opportunities. She will be enhanced. She can make a living. She can be self-reliant. It is noted that she already possesses a business school degree. Under the factors to be considered in awarding *alimony,* she will have the *earning capacity* to make a living. The trial court found, as a fact (# 8C) that her continued education "would have little financial impact." This is incongruous with the first award of $2,500 for the first five years. Surely, the award of $2,500 is for a meaningful impact— a financial impact. The trial court should have specifically denominated *rehabilitative* alimony, if such be the case, and then determined the financial impact that a four-year college education would provoke. Otherwise, such an award is abstract.

Before us is another man wronged by the judicial system. His sin is that he was successful, a white male, frugal and is caught up in a movement which inequitably elevates the rights of womanhood to the detriment of men. She now joins the army of Alimony Drones. She has the financial wherewithal to remain in idleness, if she chooses. He joins the Legion Lost.

Therefore, I would reverse and remand on the alimony award so that the trial court

could reconsider the entire award, thereby making it in harmony with our previous decisions.